J-S07011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRAD A. BAILOR | : | |
| | : | |
| Appellant | : | No. 825 MDA 2024 |

Appeal from the Judgment of Sentence Entered March 18, 2024
In the Court of Common Pleas of Snyder County Criminal Division at
No(s): CP-55-CR-0000226-2022

BEFORE: NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY NICHOLS, J.: **FILED: JULY 16, 2025**

Appellant Brad A. Bailor appeals from the judgment of sentence imposed after he was convicted of first-degree murder, third-degree murder, and possessing an instrument of crime (PIC).[1] On appeal, Appellant challenges the weight and sufficiency of the evidence, claims that his mandatory sentence of life without parole was unconstitutional,[2] and that the trial court erred by denying his motion for a new trial. After careful review, we affirm.

By way of background, on April 18, 2022 Appellant and his wife, Leslie Bailor (the Victim), got into an argument at their home. N.T., 3/13/24, at 88, 95, 97-98. During the argument, the Victim attempted to slap Appellant but missed. *Id.* at 88. Appellant responded by slapping the Victim twice. *Id.*

---

[1] 18 Pa.C.S. §§ 2502(a), 2502(c), and 907(a), respectively.

[2] *See* 18 Pa.C.S. § 1102(a)(1); 61 Pa.C.S. § 6137(a)(1).

The Victim then picked up her phone to call someone. *Id.* at 88-89. While the Victim was in the process of making that call, Appellant stated "I'll make this worse," retrieved a firearm from his dresser drawer, and proceeded to shoot the Victim four times. *Id.* at 89, 98; Commonwealth Exh. 2 (Autopsy Report) at 2. The Victim suffered gunshot wounds to the neck, torso, abdomen, shoulder, and arm.[3] *See* Autopsy Report at 1, 3-4. The Victim died from her wounds at the scene. *See* N.T., 3/14/24, at 27. A forensic pathologist determined that the Victim's cause of death was multiple gunshot wounds and the manner of death was homicide. *See* Autopsy Report at 2.

Following the incident, Appellant was arrested and charged with first-degree murder. The Commonwealth subsequently amended the charges to include third-degree murder and PIC. After Appellant waived his right to a jury trial, the case proceeded to a non-jury trial. Ultimately, Appellant was found guilty of first-degree murder, third-degree murder, and PIC. On March 18, 2024, the court imposed the mandatory sentence of life incarceration without the possibility of parole on Appellant's first-degree murder conviction as well as a concurrent sentence of one month to five years' incarceration for PIC.[4]

_____

[3] The forensic pathologist explained that the additional wounds were consistent with re-entry wounds. *See* Autopsy Report at 2.

[4] Appellant was not sentenced on his conviction for third-degree murder due to merger.

- 2 -

Appellant filed a timely post-sentence motion, which the court denied after a hearing on May 13, 2024. Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion, which referred this Court to the notes of testimony from Appellant's post-sentence motion hearing.

Appellant raises the following issues for review:

1. Did error occur where the testimony and evidence presented at trial did not show the premeditation required for a conviction of murder in the first degree, and were thus insufficient and resulted in a conviction which was against the weight of the evidence?

2. Did error occur where the trial court denied a request for a new trial, despite discovery after conviction that the implication [that Appellant] placed the weapon in the house very shortly before the offense was erroneous?

3. Did error occur where Appellant received a mandatory sentence of life imprisonment without parole as the imposition of such is cruel and unusual punishment as well as an impermissible encroachment of the judicial branch of the government by the legislative branch of the government?

Appellant's Brief at 6 (renumbered and some formatting altered).

**Sufficiency of the Evidence**

In his first claim, Appellant argues that there was insufficient evidence to "show the premeditation required for a conviction of murder in the first degree."[5]  Appellant's Brief at 11.  Appellant contends that the

_____

[5] We note that in both his brief and Rule 1925(b) statement, Appellant intertwines the standards and language for challenges to the sufficiency and weight of the evidence.  *See* Appellant's Brief at 11-14; Rule 1925(b)
*(Footnote Continued Next Page)*

Commonwealth's evidence did not establish that he acted with the specific intent to kill. *See id.* at 12-14. Appellant claims that, if he had acted with the specific intent to kill, he would not have called police to report the shooting and that his "lack of comprehension and understanding" of what had occurred is more indicative of third-degree murder. *Id.* at 14.

When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all

---

Statement, at ¶ 2. However, it is well settled that sufficiency and weight claims are separate and distinct challenges. ***See generally Commonwealth v. Smith***, 853 A.2d 1020, 1028 (Pa. Super. 2004).

To preserve a weight-of-the-evidence claim, an Appellant must raise the claim in the trial court in a post-sentence motion, by written motion before sentencing, or orally prior to sentence. Pa.R.Crim.P. 607. In Appellant's post-sentence motion, he simply states that "[his] conviction was erroneous under the facts. Specifically, the testimony and evidence presented at trial may have justified a conviction of third degree, but did not show the premeditation required for a conviction of murder in the first degree." Appellant's Post-Sentence Mot., 3/28/24, at 2 (unpaginated) (some formatting altered). At trial, Appellant made a motion for a judgment of acquittal at the close of the Commonwealth's case, which similarly made a sufficiency argument. ***See*** N.T., 3/13/24, at 99-102 (stating "[n]othing that the Commonwealth has presented indicates any premeditation or willful or deliberate action of [Appellant] to kill [the Victim,] which is what is required"); ***see also Commonwealth v. Stahl***, 175 A.3d 301, 303 (Pa. Super. 2017) (stating that "[a] motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge"). Therefore, we construe both arguments as challenging the sufficiency and not the weight of the evidence. ***See Stahl***, 175 A.3d at 303; ***Smith***, 853 A.2d at 1027-28. Further, to the extent Appellant raises a weight claim, that issue is waived, as he failed to properly preserve it before the trial court. ***See*** Pa.R.Crim.P. 607.

reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and formatting altered).

There are three elements of first-degree murder: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. As set forth in the third element, first-degree murder is an intentional killing, *i.e.*, a willful, deliberate and premeditated killing. Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death. The law does not require a lengthy period of premeditation; indeed, the design to kill can be formulated in a fraction of a second. Specific intent to kill as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. Whether the accused had formed the specific intent to kill is a question of fact to be determined by the jury.

*Commonwealth v. Jordan*, 65 A.3d 318, 323 (Pa. 2013) (citations omitted and some formatting altered).

Further, our Supreme Court has held that a defendant's contemporaneous statements can establish a specific intent to kill. *See, e.g., Commonwealth v. Vandivner*, 962 A.2d 1170, 1176 (Pa. 2009) (holding

that the defendant's statements, before and after shooting the victim, that he was going to kill her were evidence of his specific intent to kill).

Following our review of the record, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the evidence presented at trial was sufficient to establish that Appellant acted with the specific intent to kill.[6] **See Palmer**, 192 A.3d at 89.

As noted previously, the record reflects that Appellant and the Victim got into an argument immediately preceding the shooting. N.T., 3/13/24, at 88, 95, 97-98. After the Victim attempted to slap Appellant, Appellant slapped the Victim. **Id.** at 88. The Victim then tried to make a phone call. **Id.** at 88-89. At that point, Appellant stated "I'll make this worse" before retrieving a firearm and shooting the Victim four times, according to the autopsy report, including in the torso, neck, and abdomen, which are all vital parts of the body. **Id.** at 26, 41, 44, 89, 98; Autopsy Report at 1, 3-4; **see Commonwealth v. Sepulveda**, 855 A.2d 783, 788-89 (Pa. 2004) (stating the chest and abdomen are vital parts of the body); **Commonwealth v. Montalvo**, 956 A.2d 926, 933 (Pa. 2008) (holding the neck is a vital part of the body); **Commonwealth v. Hockenberry**, 747 MDA 2023, 2024 WL 889090, at *4 (Pa. Super. filed Mar. 1, 2024) (unpublished mem.) (stating

---

[6] We do not analyze the other elements of first-degree murder because, during closing arguments, Appellant conceded that these elements were uncontested. **See** N.T., 3/14/24, at 38 ("There's no contest that [Appellant] shot [the Victim]. There is no contest that [the Victim] died as a result of those shots.").

the neck and torso are vital parts of the body).[7]  Accordingly, Appellant's words and actions just prior to the shooting as well as his act of shooting the Victim in a vital part of her body shows that Appellant acted with the specific intent to kill.  **See Jordan**, 65 A.3d at 323; **Vandivner**, 962 A.2d at 1176.

Additionally, we reject Appellant's argument that his actions after the shooting, including calling the police and attempting to get medical assistance for the Victim, demonstrated that he did not have the requisite premeditation to form the specific intent to kill.  **See Commonwealth v. Sherwood**, 982 A.2d 483, 494 n.21 (Pa. 2009) (stating that attempts to render aid to the victim do not negate the specific intent to kill because the specific intent to kill is "gauged at the moment of the killing"); **Commonwealth v. Johnson**, 42 A.3d 1017, 1026 (Pa. 2012) (same); **Commonwealth v. Tillia**, 518 A.2d 1246, 1254 (Pa. Super. 1986) (stating that "[w]hether or not appellant expressed remorse is irrelevant to the determination of guilt" in a homicide case).  For these reasons, we conclude that no relief is due.

## After Discovered Evidence

In his second issue, Appellant contends that the trial court erred by denying his post-sentence motion for a new trial based upon after-discovered evidence.  Appellant's Brief at 17-19.  Specifically, Appellant refers to his motion concerning information that was disclosed by the Commonwealth after trial.  **Id.** at 18.  Appellant explains that shortly after his trial concluded the

---

[7] **See** Pa.R.A.P. 126(b) (stating that we may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

prosecutor in the case was approached by a friend of the Victim, Mr. Taylor, who told the prosecutor that the Victim had told him she knew there was a gun in the home that she shared with Appellant. *Id.* Appellant contends that this information establishes that the murder weapon was brought into the Appellant's house "well before the last few days leading up to the shooting." *Id.* Appellant argues that this information would have been important to present to the factfinder because the trial court noted that Appellant brought the gun into the home shortly before the crime during the sentencing hearing. *Id.* at 19. Appellant concludes that if this evidence had been introduced it would contradict a finding of premeditation. *Id.*

> When we examine the decision of a trial court to grant a new trial on the basis of after-discovered evidence, we ask only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. If a trial court erred in its application of the law, an appellate court will correct the error.

*Commonwealth v. Padillas*, 997 A.2d 356, 361 (Pa. Super. 2010) (citations and quotation marks omitted).

In order to be granted a new trial based on an after-discovered evidence claim, a defendant must show that the evidence:

> 1) has been discovered after trial and could not have been obtained at or prior to the conclusion of trial by the exercise of reasonable diligence; 2) is not merely corroborative or cumulative; 3) will not be used solely to impeach a witness's credibility; and 4) is of such a nature and character that a different verdict will likely result if a new trial is granted.

- 8 -

*Commonwealth v. Cousar*, 154 A.3d 287, 311 (Pa. 2017) (citations omitted). Additionally, the proposed after-discovered evidence must be "producible and admissible." *Commonwealth v. Griffin*, 137 A.3d 605, 608 (Pa. Super. 2016).

Here, the trial court addressed Appellant's after-discovered evidence claim as follows:

> **Mr. Taylor was told something by the decedent, by the victim, and he wanted to share that with the court, that is the very definition of hearsay, no exception to the hearsay rule has been cited by [Appellant] and the court is not aware of one that would permit . . . Mr. Taylor to testify as to what the victim said to him about the presence of the gun**, so that's not going to come in.

> Even if it did come in, based upon what has been represented by counsel to the court about Mr. Taylor's statement or statements, that would not have impacted the court's decision and the court's verdict in this matter. **The . . . fact that the gun came in two days or two weeks or two months prior to the events that brought – bring us here today is not that impactful, if impactful at all, on the verdict.** What is impactful was [that Appellant] and his wife [were] in a disagreement, argument . . . the victim had actually taken one or more swings at [Appellant], and . . . [Appellant] then state[ed] words to the effect [of] ["]this could get a lot worse["] or ["]I can make this a lot worse["] . . . and then [got] the gun, then fir[ed] it numerous times, fir[ed] it into a vital area of the body[.] I believe the testimony was that it was in the center chest and upper chest . . . [I]t was correctly argued by the Commonwealth that the firing of a deadly weapon into a vital part of the body is evidence of intention to commit the crime of murder in the first degree and that murder was premeditated and done with deliberation, however brief, however brief.

> [I]n [Appellant's] interview with the state police . . . he said . . . that he didn't keep the gun at his home, that he kept it at a family member's home until recently, whatever recently may be, two

days, two weeks, two months, [because] he was afraid something like this would happen.

**The statement [“]I could make this a lot worse[”] or words to that effect [are] his statement of intention, followed by him taking the steps of grab[bing] the gun, then firing it at the Victim repeatedly, two shots to the chest, the court found that that was murder in the first degree[.]**

N.T. Post-Sentence Mot. H'rg, 5/13/24, at 11-12 (emphases added and some formatting altered).

Following our review of the record, we find no abuse of discretion by the trial court in rejecting Appellant's after-discovered evidence claim. ***See Padillas***, 997 A.2d at 361. The trial court correctly concluded that the Victim's out-of-court statement to a third party was hearsay without an exception, which would have been inadmissible. ***See Griffin***, 137 A.3d at 608. In any event, the trial court concluded that, had the evidence been admissible and presented at trial, the court would not have changed its verdict. ***See Cousar***, 154 A.3d at 311. Therefore, no relief is due.

**Sentence**

In Appellant's final issue on appeal, he challenges his sentence of life without parole for his first-degree murder conviction. Appellant's Brief at 14-17. Specifically, Appellant argues that Pennsylvania's mandatory life sentence for a first-degree murder conviction is unconstitutional because the statute removes judicial discretion from sentencing and because it violates the federal and state constitutional bars against cruel and unusual punishment. ***Id.*** at 14-15. Appellant, citing ***Miller v. Alabama***, 567 U.S. 460 (2012), argues

- 10 -

that, because the *Miller* Court barred mandatory life without parole sentences for juveniles, Pennsylvania's mandatory life without parole sentence statute for adults is cruel and unusual punishment. *Id.* at 16-17. Appellant argues that *Miller*'s rationale "has a reach that should extend to adults" and that "offenders over 18 are essentially penalized because of their age and do not receive the same consideration warranted to their youthful compatriots." *Id.* at 17.

Since Appellant challenges his sentence based upon the constitutional prohibition on cruel and unusual punishment, his claim implicates the legality of his sentence. *See Commonwealth v. Lawrence*, 99 A.3d 116, 122, 124 (Pa. Super. 2014). Therefore, our standard of review is *de novo*, and our scope of review is plenary. *Id.*

It is well established that the rationale of *Miller* does not apply to offenders over the age of eighteen. *See, e.g., Commonwealth v. Rodriguez*, 174 A.3d 1130, 1147 (Pa. Super. 2017) (rejecting an eighteen-year-old offender's cruel and unusual punishment claim that relied on *Miller*); *Commonwealth v. Woods*, 179 A.3d 37, 38, 44 (Pa. Super. 2017) (stating *Miller* did not apply to an offender who was eighteen years and thirty-six days old at the time of the killing).

With respect to the propriety of mandatory sentences, this Court has previously stated:

> The legislature has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes. In addition, there is no constitutional requirement

prohibiting the legislature from imposing a mandatory sentence where, in its judgment, such a sentence is necessary. The United States Supreme Court has indicated that a court may impose whatever punishment is authorized by statute for an offense, so long as that penalty is not cruel and unusual and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment. . . . [T]his Court has explicitly held that such mandatory sentences do not violate the Eighth Amendment's ban on cruel and unusual punishment or the mandates of individualized sentencing.

We further note that as an intermediate appellate court, this Court is obligated to follow the precedent set down by our Supreme Court. It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court. To that end, our Supreme Court has routinely affirmed judgments of sentence that contain mandatory minimums. While there may be some merit to the notion that immutable minimum penalties prevent judges from exercising discretion . . . it does not follow that, therefore, a statute is inherently rendered unconstitutional because it carries with it a fixed sentence.

*Commonwealth v. Fuentes*, 272 A.3d 511, 520-21 (Pa. Super. 2022) (citations omitted and some formatting altered).

Further, we note that, when reviewing a claim alleging a statutory sentencing scheme is unconstitutional, this Court must presume the validity of "a punishment selected by a democratically elected legislature" and that "[a] heavy burden rests on those who would attack the judgment of the representatives of the people." *See Commonwealth v. Yasipour*, 957 A.2d 734, 741 (Pa. Super. 2008) (citation omitted). Ultimately, "[i]n order for an act to be declared unconstitutional, the challenging party must prove the act 'clearly, palpably and plainly' violates the constitution." *Id.*

To the extent Appellant claims that his mandatory life sentence violates the federal and state constitutional bars against cruel and unusual punishment, Appellant fails to cite a single case supporting his assertion that the *Miller* Court's rationale should extend to adults. *See* Appellant's Brief at 14-17. Since this Court has repeatedly concluded that *Miller*'s rationale does not apply to adults, Appellant is not entitled to relief on this claim. *See, e.g., Rodriguez*, 174 A.3d at 1147; *Woods*, 179 A.3d at 44.

Further, as to Appellant's assertion that his mandatory life sentence is unconstitutional because it is an improper removal of judicial sentencing discretion by the legislature, Appellant's boilerplate argument does not carry his burden of demonstrating that his sentence is unconstitutional. *See Yasipour*, 957 A.2d at 741. Therefore, he is not entitled to relief. Accordingly, we affirm.

Judgement of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/16/2025

- 13 -